O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE DIAZ, | ) NO. CV 13-7572-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) AND ORDER ) ) ) |
| Defendant. | ) |

Plaintiff filed a Complaint on October 23, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. (ECF No. 3.) On January 9, 2014, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 11.) The parties filed a Joint Stipulation on July 26, 2014, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 17.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on October 15, 2008, and an application for SSI on October 7, 2008. (Administrative Record ("A.R.") 88, 89.) Plaintiff, who was born September 28, 1958 (*id.*), claims to have been disabled since October 13, 2007, due to: degenerative disease of the cervical spine; degenerative disc disease of the lumbosacral spine with hypertrophic facet changes; impingement syndrome of the right shoulder, status post bursectomy and acromionectomy on November 28, 2008; carpal tunnel syndrome bilaterally; de Quervain's tenosynovitis of the wrists bilaterally; chondromalacia and cyst of the left knee; medial and lateral menisci tears of the knees bilaterally, status post meniscectomies of the left knee on December 2, 2010; hypertrophic changes of the feet; calcaneal spur of the right foot; diastolic dysfunction of the left ventricle; diabetes mellitus; hypertension; and obesity. (A.R. 13, 88, 89.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff filed an untimely request for a hearing. (A.R. 111.) On September 30, 2009, the Administrative Law Judge ("ALJ") dismissed plaintiff's request for a hearing, because she had failed to establish good cause for missing the deadline to request a hearing. (*Id.* 92-96.) On October 5, 2009, plaintiff filed a Request for Review of Hearing Decision, thereby appealing the ALJ's decision to dismiss plaintiff's request for a hearing. (*Id.* 112.) On October 28, 2009, the Appeals Council granted plaintiff's request, vacating the ALJ's order of dismissal and ordering the ALJ to give plaintiff another opportunity for a hearing. (*Id.* 97-99.) On May 16, 2011, August 22, 2011, March 22, 2012, and June 22, 2012, hearings were held before ALJ Richard Urbin. (*Id.* 27-87.) Plaintiff, represented by counsel, and vocational expert ("VE") Laurence Gordon testified at the March 22 and June 22, 2012 hearings. (*Id.* 27-78.) Plaintiff also appeared at the hearing on August 22, 2011, during which no testimony was taken. (*Id.* 79-87.) On August 21, 2012, the ALJ denied plaintiff's claim. (*Id.* 10-20.) The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. (*Id.* 1-3.) That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In his August 21, 2012, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. (A.R. 12.) He also cited evidence of record that suggested plaintiff may have engaged in substantial gainful activity since October 13, 2007, the alleged onset date of her disability. (*Id.*) Because he found plaintiff not disabled at step 4, he declined to make a definitive finding regarding whether she had engaged in substantial gainful activity after the alleged disability onset date. (*Id.*)

The ALJ determined that plaintiff has the severe impairments of: degenerative disease of the cervical spine; degenerative disc disease of the lumbosacral spine with hypertrophic facet changes; impingement syndrome of the right shoulder, status post bursectomy and acromionectomy on November 28, 2008; carpal tunnel syndrome bilaterally; de Quervain's tenosynovitis of the wrists bilaterally; chondromalacia and cyst of the left knee; medial and lateral menisci tears of the knees bilaterally, status post meniscectomies of the left knee on December 2, 2010; hypertrophic changes of the feet; calcaneal spur of the right foot; diastolic dysfunction of the left ventricle; diabetes mellitus; hypertension; and obesity. (*Id.* 13.) The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* 14.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as follows: lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours; sit about six hours; perform postural activities occasionally; and handle, finger, and reach bilaterally frequently. (*Id.*) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record. (*Id.* 15-19.)

Based on the testimony of the VE, the ALJ found that plaintiff is capable of performing her past relevant work as a production assembler and an order picker. (A.R. 19-20.) Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from October 13, 2007, the alleged onset date, through August 21, 2012, the date of the ALJ's decision. (*Id.* 20.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISCUSSION

Plaintiff claims that the ALJ erred in failing to properly consider: (1) plaintiff's subjective complaints; and the opinions of her treating physician, Dr. Goldman. (Joint Stip. at 3.)

### I.      The ALJ Properly Evaluated Plaintiff's Credibility.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which

the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ concluded that "[a]fter careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 15.) Significantly, while the ALJ cited no evidence of malingering by plaintiff, he did note evidence of "symptom exaggeration." (Id. 17). The ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (Id. 15.) Accordingly, assuming, without deciding, that "symptom exaggeration" is not equivalent to "malingering," the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

Plaintiff alleges the following subjective complaints: she is in constant pain; "[except] for some cooking[, she] really can't do much of anything else due to [her] severe pain[;]" she takes naps during the day; she wears a splint on her right wrist; she is able to do very little on her own due to a surgery on her right shoulder in November 2008; she has pain in her hips and thighs; she is unable to bend her knees or stand for long periods of time due to pain all through her body; and she is unable to work due to carpal tunnel syndrome bilaterally, right shoulder/arm pain, and right heel pain, which affect her ability to stand, walk, sit, perform some postural activities, and perform manipulative activities. (A.R. 15 (citing plaintiff's Exertion Questionnaire, initial Disability Report - Appeal, subsequent Disability Report - Appeal, hearing testimony)).) Plaintiff contends that the ALJ did not provide clear and convincing reasons to discredit her testimony and did not indicate which specific statements made by plaintiff he accepted or rejected, or which evidence discredited those statements. (Joint Stip. at 4.) However, a review of the record shows that the ALJ rejected plaintiff's testimony for a number of clear and convincing reasons.

\\
\\

### A. Objective Medical Evidence

The ALJ discredited plaintiff's subjective symptom testimony based on, *inter alia*, his conclusion that the objective medical evidence did not support the severity of the symptoms and limitations reported by plaintiff. (A.R. 15-16 ("The objective medical evidence does not substantiate the degree of impairment severity alleged by the claimant.").) The ALJ also noted that because the record contains evidence that plaintiff exaggerates her symptoms, he could not "rely on the accuracy of the results of effort-dependant testing which are within her control." (*Id.* 15.) He noted that despite her lack of effort at times, the results of plaintiff's consultative orthopedic examination conducted by Ibrahim Yashruti, MD, a board-certified orthopedic surgeon, demonstrated "relatively good mobility and range of motion and usually demonstrates no significant neurological deficits on effort-dependent testing." (*Id.* (citing *id.* 652-64).) He also observed that the clinical findings over which plaintiff had no control, such as muscle atrophy and reflexes, were normal. (*Id.* 15-16 (citing *id.* 652-64).) Dr. Yashruti found no atrophy of the intrinsic muscles of the hand, and Sean To, M.D., who completed an independent internal medicine evaluation of plaintiff (*id.* 461-66), also found that her muscle tone and mass appeared normal. (*Id.* 464, 654.) This discrepancy between the plaintiff's subjective complaints and the objective clinical findings constitutes a clear and convincing reason for for discounting plaintiff's subjective complaints. Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (a conflict between subjective complaints and the objective medical evidence in the record is a sufficient reason that undermines a claimant's credibility). While the fact that the objective medical evidence does not corroborate the degree of plaintiff's allegedly disabling symptoms cannot form the "sole basis" for discounting plaintiff's subjective symptom testimony, Burch, 400 F.3d at 681, plaintiff is not entitled to reversal on this ground, because, as discussed below, the ALJ provides other clear and convincing reasons supported by substantial evidence for discrediting plaintiff's subjective symptom testimony.

\\
\\

### B. Conservative Treatment

The ALJ noted that plaintiff's "treatment history is not commensurate with her allegations." (A.R. 16.) Plaintiff was treated conservatively for her back and neck symptoms, and no doctor had recommended surgery or physical therapy. (*Id.* 15-16, 55, 56; *see also id.* 634 ("She has been treated with conservative care").) Although plaintiff had surgery on her right shoulder in November 2008, she testified that no doctor had recommended physical therapy or found that any additional surgery was necessary. (*Id.* 63-64; *see also id.* 568 ("subacromial decompression surgery on November 25, 2008 . . . remedied her primary complaint of moderate right shoulder pain").) Similarly, she had left knee surgery on December 3, 2010, and testified to continuing symptoms, but she received no follow-up treatment after the surgery. (*Id.* 59; *see also id.* 594.) Plaintiff also used only conservative treatment methods for her right knee, *i.e.* a TENS unit, a topical cream, and, sporadically, a brace, and she stated that no surgery or physical therapy was recommended for her right knee. (*Id.* 61-62.) In addition, the ALJ observed that although plaintiff was diagnosed with hypertension and diabetes, plaintiff was not under a doctor's care for those conditions as of August 4, 2008. (*Id.* 16, 64.) Plaintiff also received no treatment for her alleged right heel impairments, because the doctor she contacted never returned her call, and she never asked her chiropractor for another referral. (*Id.* 16, 65-67.) Further, plaintiff testified that she had decided to use a cane after she had difficulty getting out of her car; it was not prescribed by a doctor. (*Id.* 16, 58-59.) Finally, although plaintiff has no medical insurance and receives all her treatment through Workers' Compensation, she has not sought additional medical treatment from a facility that offers free or low-cost treatment. (*Id.* 16, 57.)

The ALJ was entitled to discount plaintiff's credibility based on the conservative and routine treatment she received for her conditions. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(e) (an ALJ may consider treatment that claimant receives for relief of his pain or other symptoms); Soc. Sec. Ruling 96-7p (individual's statements may be less credible if the treatment is inconsistent with the level of complaint); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may consider

individual's medical treatment history in evaluating credibility); McKnight v. Comm'r Soc. Sec., No. 1:12-cv-00726-AWI-JLT, 2013 WL 3773864, at *9 (E.D. Cal. July 17, 2013) (ALJ properly discounted physician's opinion based on claimant's positive response to conservative treatment, including knee injections and pain medication). Further, plaintiff's conservative medical treatment, when viewed in the light of her complaints of extraordinary pain, constitutes a clear and convincing reason for discounting plaintiff's credibility.

### C.  Inconsistent Statements

The ALJ also observed that plaintiff made inconsistent statements regarding medication side effects. (A.R. 17.) For instance, plaintiff denied any side effects in her Disability Reports (*id.* 291, 322, 341) and during questioning by the ALJ (*id.* 17, 51-52, 54, 56, 56, 68). Plaintiff similarly testified that she experiences no side effects from her medications when questioned by her attorney, but, when counsel specifically asked if her medication affects her vision, plaintiff testified that her vision becomes blurry if she takes too much Norco. (*Id.* 73-74.) Counsel then asked if medication affects her "mental facilities" or "concentration," and plaintiff responded that it makes her want to go to sleep and she naps for an hour and a half. (*Id.*) Plaintiff admitted, however, that she never complained to her doctor, Dr. Goldman, about these side effects. (*Id.* 74-75.) Consequently, the ALJ legitimately questioned why, if plaintiff actually suffered chronic and significant medication side effects, "she would wait until the hearing to report them." (*Id.* 17.)

The ALJ also noted that plaintiff provided inconsistent reasons for why she stopped working. (A.R. 17.) Plaintiff told the Social Security Administration and the ALJ that she stopped working at one job due to an injury (*id.* 43), but she told the Workers' Compensation examiner, a chiropractor, that she was laid off when her employer relocated to another state (*id.* 533-34). Plaintiff also implied during a hearing before the ALJ that she stopped work at another job due to a conflict with her employer, not because of her impairments. (*Id.* 17, 40-41.)

The ALJ is entitled to use ordinary techniques of credibility evaluation, including consideration of the claimant's prior inconsistent statements about her symptoms and other testimony by the claimant that appears less than candid. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Accordingly, plaintiff's inconsistent statements provided a clear and convincing reason for discounting plaintiff's testimony.

### D. Symptom Exaggeration

The ALJ also noted evidence of symptom exaggeration by plaintiff. (A.R. 17.) Dr. To, who conducted an independent medical examination, noted that plaintiff "[put] forth poor effort" when he tried to measure her grip strength. (*Id.* 463.) A Workers' Compensation examiner noted that plaintiff's limp was inconsistent, observing that she walked with a mild left-sided limp and "sometimes" limps on the right side." (*Id.* 653.) The ALJ also referred to pulmonary function test that was administered three times with no acceptable or reproducible results.[1] (*Id.* 17 (citing *id.* 702).)

Additionally, the ALJ found that plaintiff's complaint of zero grip strength was inconsistent with her activities of daily living, which included cooking, grocery shopping with her son, driving a car, and doing light housework. (A.R. 17 (citing plaintiff's Exertion Questionnaire).) "These reported activities," the ALJ wrote, "and [plaintiff's] lack of any muscle atrophy are inconsistent with [her] reported grip strength of zero pounds on the right." (*Id.*)

Plaintiff's apparent symptom exaggeration provided a clear and convincing reason for discounting plaintiff's testimony *See* Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)

---

[1] The Court notes that Dr. Yashruti, a consultative examiner, observed that "[o]bjectively, [plaintiff] limited the extension of the cervical spine," after his assessed range of motion in extension was first noted to be 30 degrees, and when the test was repeated, her range of motion was 10 degrees. (A.R. 653, 665.)

(inconsistent statements and a tendency to exaggerate provide a valid basis for discrediting the claimant's testimony); Smolen, 80 F.3d 1284 (ALJ may consider plaintiff's reputation for truthfulness, prior inconsistent statements concerning symptoms, and other testimony by plaintiff that appears less than candid).

### E. Conclusion

Because the ALJ's adverse credibility determination was supported by substantial evidence, the Court "may not engage in second-guessing." Thomas, 278 F.3d at 959 (citation omitted). Plaintiff is not entitled to reversal on this ground.

## II. Plaintiff's Treating Physician

### A. Legal Standard

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician, and the weight afforded a non-examining physician's testimony depends on the degree to which he provided supporting explanations for his opinions. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); see also 20 C.F.R. § 404.1527(c), 416.927(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant.

Magallanes, 881 F.2d at 751.  When an examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Ghanim, 763 F.3d at 1161; Garrison, 759 F.3d at 1012; see also Ryan, 528 F.3d at 1198.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; see Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041.  Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

**B.    Analysis**

Plaintiff contends the ALJ erred by failing to state whether he accepted or rejected the opinions of her treating physician, Scott Goldman, MD, and to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Goldman's opinions.  (Joint Stip. at 16.)  She states that "the ALJ merely sets forth a summary of conclusory reasons for rejecting Dr. Goldman's opinions."  (*Id.* 17.)  The Court disagrees.

On July 11, 2011, plaintiff presented to Dr. Goldman for an orthopedic evaluation. (A.R. 646-47.) In his orthopedic evaluation report, Dr. Goldman wrote:

> [Plaintiff] is a patient who has been under my care for painful conditions affecting her right shoulder, left shoulder, thoracic spine, lumbar spine, right knee, and left knee, as well as numbness and tingling in the left hand. . . . [Plaintiff] has disabling pain affecting multiple body parts. She is unable to sit for prolonged periods, stand for prolonged periods, or walk for prolonged periods. She is unable to climb stairs repetitively. She is unable to push, pull, or lifting [sic] anything more than 5 lbs. [Plaintiff] is permanently disabled and unable to return to the workforce.

(*Id.*)

In support of his opinion, Dr. Goldman reported the results of a physical examination of plaintiff that he conducted on June 29, 2011. Specifically, he noted: pain on motion of plaintiff's right shoulder; positive Phalen and Tinel signs in her left hand; tenderness and spasm in the thoracolumbar spine, with pain on motion; positive straight leg raising test on the left leg; and crepitus, pain and moderate effusion, as well as tenderness, in the right and left knees. (A.R. 646-47.) Dr. Goldman diagnosed her with osteoarthritis of the right and left shoulders, right and left knee, and thoracolumbar spine, and with carpal tunnel syndrome in her left hand. (*Id.* 647.)

The ALJ gave little weight to Dr. Goldman's opinions regarding the extent of plaintiff's disability, stating that:

> The doctor gave opinions on an issue reserved to the Commissioner of the Social Security Administration. . . . With respect to the doctor's July 2011 opinion, in offering this opinion, the doctor relied on "disabling pain affecting multiple body parts." The doctor, however, treated the claimant for her left knee and left carpal

13

> tunnel syndrome. The day of his opinion, the doctor for the first time assesses osteoarthritis of the shoulders bilaterally, osteoarthritis of the thoracolumbar spine and osteoarthritis of the knees bilaterally. The objective medical evidence does not support the doctor's opinion. The doctor apparently relied on the claimant's subjective complaints; the only diagnostic study ordered by the doctor concerned the claimant's left lower extremity [citing id. 582-84], and he considered the MRI of the left knee ordered by Chiropractor McClellan [citing id. 596]. I, however, find the claimant less than fully credible. In addition, the doctor again gave an opinion on an issue reserved to the Commissioner . . . .

(A.R. 18 (citations omitted).)

### 1. Objective Medical Evidence

The ALJ's observation that Dr. Goldman's opinions were conclusory and unsupported was a specific and legitimate reason for rejecting Dr. Goldman's assessments. An ALJ may reject a treating physician's opinions if they are "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) (the weight afforded a treating source opinion depends on the treatment the source provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories). Here, a review of the record demonstrates that Dr. Goldman's treating notes do not support his July 2011 findings, and those findings are contradicted by the other objective medical evidence.

Specifically, the record shows that during the course of Dr. Goldman's treating relationship with plaintiff -- from approximately October 2010 through July 2011 -- Dr. Goldman treated plaintiff only for her left knee and left carpal tunnel syndrome. (A.R. 18 (citing id. 587, 588, 593, 600, 601, 633, 636, 640, 644).) Even his June 29, 2011 physical examination findings appear to

be generally unremarkable, with mentions only of pain on motion, diminished sensation in two fingers of the left hand, tenderness, and effusion. (A.R. 646-47.) It was not until his July 2011 opinion that Dr. Goldman noted that plaintiff experiences "disabling pain affecting multiple body parts" and diagnosed plaintiff with osteoarthritis of the shoulders bilaterally, osteoarthritis of the thoracolumbar spine, and osteoarthritis of the knees bilaterally." (*Id.* 647.) Additionally, the only diagnostic study and MRI that Dr. Goldman consulted concerned plaintiff's left leg. (*See id.* 582-84 (ordering a diagnostic study of plaintiff's lower left extremity), 598 (considering an MRI of plaintiff's left knee that was ordered by plaintiff's chiropractor).)

Plaintiff contends that the ALJ had a duty to seek additional evidence or clarification from Dr. Goldman about his opinion before rejecting it on the grounds that it was unsupported. (Join Stip. at 20-21.) Plaintiff is correct that, in disability benefits cases, the ALJ has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150). Additionally, when the basis for a treating physician's opinion about an issue reserved to the Commissioner is "not clear," the ALJ is required to make "every reasonable effort to recontact [the physician]." Soc. Sec. Ruling 96-5p. However, the basis for Dr. Goldman's opinion that plaintiff was "permanently disabled and unable to return to the workforce" was clear in this case, because Dr. Goldman submitted approximately 18 pages of treating notes (*see* A.R. 584-602) and presented the results of the physical examination he conducted on June 29, 2011 in support of his opinion (*id.* 646-47.) Thus, the basis for Dr. Goldman's opinion was clear, but it simply did not support his assessment of plaintiff's limitations.

Further, the record was neither inadequate nor ambiguous on the question of whether plaintiff's physical impairments precluded her from working, because: Dr. Goldman's treating

notes show that Dr. Goldman did not treat plaintiff for disabling pain but, rather, only for left knee impairments and carpal tunnel syndrome (A.R. 18 (citing *id.* 587, 588, 593, 600, 601, 633, 636, 640, 644)); nothing in the record suggests that some of his treating notes were missing; and plaintiff's other medical records confirm that the objective medical evidence does not support Dr. Goldman's opinion. Specifically, the consultative orthopedic examination conducted by Dr. Yashruti in November 2011, showed that plaintiff had "relatively good mobility and range of motion" and she demonstrated normal muscle atrophy and reflexes on tests that were not reliant on her efforts.[2] (A.R. 15-16 (citing *id.* 652-66).) Additionally, imaging studies of plaintiff's neck and back revealed no significant nerve-root impingement (*id.* 464-65); an assistive device to ambulate was deemed not medically necessary, and plaintiff denied use of any such device (*id.* 464); clinical findings regarding carpal tunnel were equivocal; and there was no medical evidence of any significant end-organ damage due to hypertension or diabetes.[3] (*Id.* 15-16.)

Accordingly, there was no lack of clarity in the record that triggered the ALJ's duty to recontact Dr. Goldman. Furthermore, the record showed that Dr. Goldman's opinion was not supported by his treating notes and was contradicted by the objective medical evidence. Thus, the objective medical evidence provided a specific and legitimate reason, based on substantial evidence of record, for discounting Dr. Goldman's opinion of permanent disability.

### 2. Subjective Complaints

The ALJ reasoned that, because Dr. Goldman's opinion was not supported by objective medical evidence, Dr. Goldman relied heavily on plaintiff's subjective complaints. The ALJ then

---

[2] The Court notes that the ALJ gave less weight to Dr. Yashruti's opinion that plaintiff could perform the full range of medium work, based on a statement Dr. Yashruti made that plaintiff's "degenerative changes were consistent with her age." (A.R. 16. (citing *id.* 655).)

[3] The ALJ also noted that, despite his request to receive the results of plaintiff's examination by an agreed medical examiner, plaintiff's representatives never submitted the report(s). Therefore, he suggested that the results of agreed medical examination may have been "unfavorable" to plaintiff. (A.R. 16.)

concluded that, because the ALJ found plaintiff less than credible, Dr. Goldman's apparent reliance on plaintiff's subjective complaints undermined the reliability of his opinions. (A.R. 18.)

The Court agrees that Dr. Goldman's determination that plaintiff's pain was "disabling," in the absence of objective medical evidence supporting that opinion, demonstrates that he was giving credit to plaintiff's subjective complaints. As explained above, the Court has already found that the ALJ properly discounted plaintiff's credibility regarding her subjective complaints, because, *inter alia*: her complaints were not supported by the objective evidence; she relied solely on conservative treatment; and she made inconsistent statements. Accordingly, the ALJ was entitled to discount Dr. Goldman's opinion for being based on plaintiff's less than credible subjective complaints, and this was a specific and legitimate reason supported by substantial evidence for discounting his opinion. Morgan, 169 F.3d at 602 (a physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (same); Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam) (same).

## CONCLUSION

Accordingly, for the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 17, 2014

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE